**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LARRY KLAYMAN,
A Natural Person,
Resident of Florida

                  Plaintiff,

     v.

BARACK HUSSEIN OBAMA, acting individually and
as President of the United States of America

            and

Dr. Anthony Fauci, acting individually and as Director,
National Institute of Allergy and Infectious
Diseases, U.S. National Institutes of Health,
9000 Rockville Pike
Bethesda, Maryland 20892

            and

Thomas R. Frieden, acting individually and as Director
U.S. Centers for Disease Control and Prevention
1600 Clifton Road
Atlanta, Georgia 30329-4027

            and

Sylvia Mathews Burwell, acting individually and as
Secretary of
the U.S. Department of Health and Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201

            and

Jeh C. Johnson, acting individually and as Secretary of
U.S. Department of Homeland Security
12th & C Street SW
Washington, DC 20024

            Defendants.

**CIVIL COMPLAINT**

  Civil Action No.  _____

\* Addresses not listed here for security reasons.

## COMPLAINT

Plaintiff sue the Defendants, as individuals and in their official and unofficial capacities, for providing material support to terrorists and terrorist groups, for discrimination as to race and religion, and other causes of action.  As grounds therefore, Plaintiff alleges as follows:

## I.    INTRODUCTION  AND NATURE OF THE ACTION

1.  This is a civil action for Defendants providing material support to Foreign Terrorist Organizations (as that term is defined in 8 U.S.C. 1189 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")) as part of a scheme to encourage and facilitate acts of international terrorism as defined by 18 U.S.C.  2331. This is an action as well for violations of 18 U.S.C. 2333, 2339 and 2339A (terrorism related activities).

2.  This is also an action for violations of 18 U.S.C. 1983 et. seq and 1985 et. seq. (discrimination under color of state action and law on the basis of race, ethnicity and religion).

## II.    CLASS ACTION STATUS

3.  Plaintiff reserves the right to move the Court to certify this case and its causes of action as a class action pursuant to the Federal Rules of Civil Procedure.

## III.    JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332(a)(2), and 18 U.S.C. §§ 2333 and 2334. The amount in controversy exceeds $75,000.00.

5.  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1350 (Alien Torts Claims Act).

6. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1605 (general exceptions to jurisdictional immunity) and 28 U.S.C. § 1605A (terrorism exception to jurisdictional immunity).

7. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343 (a)(3) and 42 U.S.C. § 1983.

8. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 under diversity of citizenship in that the Plaintiff is a citizen of Florida, the Defendant Barack Obama is a citizen of Illinois temporarily resident in the District of Columbia, and the other Defendants are located in the District of Columbia or living within commuting range in suburban Northern Virginia or suburban Maryland.

9. The amount in controversy exceeds $75,000.

10. Venue is proper for Defendants pursuant to 28 U.S.C. § 1391(f)(4).

11. Venue is proper in this district pursuant to 18 U.S.C. § 2334(a) and 28 U.S.C. §§ 1391(b) and 1391(d).

## IV.   **THE PARTIES**

12. Lead Plaintiff Larry Klayman is a natural person and resident in the State of Florida and is the Founder and General Counsel of Freedom Watch, Inc.  The Plaintiff's standing and injury is set forth in detail below in ¶¶ 45-58 and other relevant paragraphs of this complaint. Plaintiff Klayman is a citizen of the United States of the Caucasian race, is of Jewish origin and is a Christian.

13. Defendant Barack Hussein Obama is a natural person domiciled in the State of Illinois and resident temporarily for a definite period in the District of Columbia, who is or claims to be acting in his individual and official capacities though under the color of law

as the head of the Executive Branch of the United States Government as President.
Defendant Obama is of African-black heritage and race and is religiously a Muslim in
whole or in part. However, contrary to his claimed or apparent authority he is not a
natural born citizen of the United States eligible to be President of the United States. He
thus lacks the constitutional authority and right to take actions or non-actions by and on
behalf of the citizens of the United States, and has done so and continues to do so in
violation of the Constitution and any powers otherwise vested in the Office of the
President.

14. Defendant Barack Hussein Obama has determined the policies and decisions as set forth
in this complaint on behalf of himself and all other Defendants, who are thus illegally
acting or refraining from proper actions at the direction and supervision of Defendant
Obama, both in their individual and official capacities. Defendant Obama's lawless
actions exceed and violate his authority as President of the United States and are intended
to evade the law and health and welfare policies on behalf of the American people. They
are intended to further interests that are contrary to the interests of U.S. citizens but in
fact favor African and other foreign interests, at the expense and to the severe detriment
of Plaintiff and the rest of the American people, who have been and are, by virtue of his
actions, being exposed to and will die en masse as a result of the deadly Ebola virus.
Thus, Defendant Obama and the other Defendants, each and every one of them, jointly
and severally, are acting to further, directly or indirectly, terrorist interests and terrorism
generally against Plaintiff and the American people as a whole, as well as to discriminate
against Plaintiff and other Jewish and Christian Caucasian Americans. In short,
Defendants actions in exposing Plaintiff to the Ebola virus as well as other Americans is

the direct result of discrimination against Plaintiff on the basis of his Caucasian race and Jewish-Christian religion and in favor of people of the African-Black race and the Islamic religion, as set forth below and herein. Defendant Obama on behalf of himself values an African-Black and Muslim life more than he does the lives of persons from the Caucasian or other races and religions, and this is reflected in his and the other Defendants' actions with regard to allowing past and continued entry of persons from Ebola stricken Liberia and the rest of West Africa into the United States, despite the likelihood of an epidemic occurring.

15. Dr. Anthony Fauci is a natural person on information and belief domiciled in the State of Maryland who is acting in his individual and official capacities though under the color of law as Director of the National Institute of Allergy and Infectious Diseases at the U.S. National Institutes of Health located in Bethesda, Maryland.

16. Defendant Tom Frieden is a natural person domiciled in the State of Georgia who is acting in his individual and official capacities though under the color of law acting as Director of the United States Center for Disease Control and Prevention (CDC), setting the guidelines, policies, and directives governing all Ebola response within the United States.

17. Defendant Sylvia Mathews Burwell, is a natural person who is acting in her individual and official capacities though under the color of law acting Secretary of the U.S. Department of Health and Human Services located in the District of Columbia.

18. Defendant Jeh Johnson, is a natural person who is acting in his individual and official capacities though under the color of law acting as Secretary of the U.S. Department of Homeland Security located in the District of Columbia.

**V.**     **FACTS COMMON TO ALL COUNTS**

19. It is reasonably foreseeable and indeed a virtual certainty that the Ebola virus presents a severe risk and will be and is in the process of being used for terrorism as germ warfare.

20. Defendants are facilitating, furthering or aiding the opportunity for terrorists – holding open the door for terrorists in a reckless and intentional plan to infect millions of American citizens.

21. Defendants' actions are an open invitation for terrorists to acquire infections of Ebola and travel to the United States to intentionally spread the disease inside "the Great Satan," including in "soft targets" such as restaurants, shopping malls, and other public and private places.

22. As just one example, a terrorist intentionally infected with Ebola could simply walk around the United States Senate Hart Office Building, Dirksen Office Building or Russell Office Building, and the Senate cafeterias or the United States House of Representatives Cannon Office Building, Rayburn Office Building or Longworth Office Building and the House cafeterias, including greeting people and shaking hands, with the purpose to spread an Ebola outbreak throughout the U.S. Congress, including through physical contacts.

23. If an Ebola outbreak becomes uncontrolled in the United States, the need for isolation and quarantine would lead to severe disruption of the U.S. economy and society.

24. If an Ebola outbreak becomes uncontrolled in the United States, the United States' ability to project military force in support of Israel and other allies and against militant extremists in the Middle East and worldwide would be severely reduced.  The U.S. military would likely also be needed to keep order within the country at home, as mass

panic will result. As a result, there is a strong motivation by America's enemies to spread the Ebola virus within the United States as germ warfare.

25. Many historical examples of disease used in war are known in the Arab and Muslim world which, by and large, worships a god that directs them to kill all "infidels."

26. Defendant Obama feels, at a minimum, a kinship toward the Muslim world, as he was born to a Muslim father, studied in his youth at Muslim schools, and was likely born in the African nation of Kenya. Indeed, Defendant Obama has admitted that he is at least one-half Muslim and is proud of it, among many other indicia of his Muslim faith.

27. The very public spectacle of Defendants announcing that they will not take actions to seriously restrict people infected with Ebola from entering the United States from Liberia and West African telegraphs and announces and gives free license to Muslim terrorists around the world – who are not ignorant – that the terrorists will be able to easily enter the United States at will to spread Ebola anytime they so decide.

28. Current plans in the United States for restraining the epidemic are intentionally reckless and grossly negligent, rising to the level of intentional conduct, and dependent upon an infected patient voluntarily and truthfully reporting their prior contact with the disease, as well an ineffective screening of travelers at just a few airports.

29. Intentionally spreading Ebola within the United States is a viable method of terrorism because Muslim terrorists (those likely to commit such acts) are convinced that they will be rewarded in paradise for eternity for giving their lives in the fight of Jihad for their god Allah, including the reward of being married to 72 beautiful and doe-eyed virgins, and are convinced that their god Allah commands them to kill anyone who does not convert to the Islamic religion (infidels). Some are also taught that in pursuit of these

goals, collateral damage of some Muslim deaths is acceptable in the process. As a result, becoming infected to kill infidels – unthinkable to most Americans – is an Islamic path to eternal pleasures and rewards under the teachings of Islam.

30. Defendants now adamantly refuse to limit travel to the United States from Ebola outbreak countries arguing falsely that medical personnel would be hindered from assisting Africa.

31. It scarcely needs mentioning that under any travel ban by a rational government, medical personnel, humanitarian assistance, medical equipment and supplies would of course always be allowed to travel to Western Africa as obvious exceptions to any travel ban.

32. As a result, so unpersuasive and illegitimate is Defendants' excuse for not limiting the spread of Ebola to the United States that it shows Defendants' intentionally reckless and improper and disingenuous motives.

33. All the other Defendants are acting or failing to act at the express direction of Defendant Barack Obama, are carrying out the orders of Defendant Obama, and are subject in their jobs to direct supervision, control and/or firing by President Obama, at whose pleasure they serve.

## **Defendants Know that Ebola Could Be Transmitted Through the Air**

34. The "precautions" used by the CDC demonstrate that Defendants have actual knowledge of a substantial risk and actuality that Ebola will be transmitted through the air to infect others.

35. CDC guidelines include very conspicuous protective gear, hazmat suits, and arrangements that are only relevant to protect against airborne transmission of a disease. [1] Breathing masks, for example, filter out _airborne_ germs or viruses while one breathes.

36. As pointed out by Dr. Brian C Joondeph,[2] when the CDC transports Ebola patients, "The ambulance driver was wearing protective gear, including a facemask.  Why was that necessary?  The CDC is confident that Ebola can be transmitted only via 'blood or body fluids.'  So facemasks shouldn't be necessary [for the driver]."

37. Dr. Joondeph continues:  "the recent case of a nurse in Spain contracting Ebola raises more questions than answers.  She entered the room of the infected patient only twice; [3] "[b]oth times, the nurse wore personal protective equipment."  But her protective gear did not include "autonomous breathing," meaning that she might have inhaled Ebola."  That is, the nurse's Ebola infection is being blamed on a protective suit that required her to breathe the air from the Ebola patient's hospital room, instead of isolating her air. [4]

---

[1]     "The CDC has been planning and putting protocol and facilities and equipment for exactly this kind of event for many years. … A special high-efficiency particulate air (HEPA) filtered respirator powered by a rechargeable battery supplies air for breathing and cooling. Those filters remove particles down to .03 micrometers, including viruses like Ebola, according to CDC protocols."  "Moving Ebola Patients to U.S. Involves Extreme Isolation", Discovery News, Aug 1, 2014
  http://news.discovery.com/human/health/moving-ebola-victim-to-us-involves-extreme-isolation-140801.htm
[2]     "Airborne Ebola? More Settled Science?" American Thinker, http://www.americanthinker.com/blog/2014/10/airborne_ebola_more_settled_science.html
[3]     "A vexing mystery in Spain: How did a nurse contract Ebola?",  The Washington Post, October 7, 2014, http://www.washingtonpost.com/news/to-your-health/wp/2014/10/07/after-nurse-contracts-ebola-spanish-health-workers-raise-concerns-about-protective-equipment/
[4]     "Ebola: Spanish Nurse Contracted Virus as Suit Worn 'did not Meet Safety Requirements' ," International Business Times, October 7, 2014, http://www.ibtimes.co.uk/ebola-spanish-nurse-contracted-virus-suit-worn-did-not-meet-safety-requirements-1468839

38. When the CDC flew infected Americans Dr. Kent Brantly and his assistant Nancy Writebol back to the United States on a Gulfstream medical jet to Emory University Hospital's isolation unit for infectious diseases, the CDC announced the precaution of a negative air pressure environment in Emory's isolation unit and the jet. [5] Negative air pressure is only relevant to preventing airborne transmission of the Ebola virus.[6]

39. The CDC knows that airborne transmission of Ebola is likely, but has lied to the American people, at the direction of Defendant Obama, to the contrary.[7]

40. Well-known Dr. Elizabeth Vliet warns that an unusually small number of viral bodies can infect a person with Ebola, far less than with most diseases.

41. Ebola Reston [8] proves that the deadly Ebola Zaire strain could also mutate into an airborne disease.   In 1989, a mutated strain – Ebola Reston – was transmitted through the air.  Hundreds of laboratory monkeys in Reston, Virginia, caught the Ebola Reston virus through the ventilation system while separated in different rooms.  Fortunately, Ebola Reston caused only mild sickness in humans, but Ebola Zaire could similarly mutate.

---

[5]     The air pressure is kept slightly lower in the quarantined compartment of a laboratory or vehicle to hinder a virus from escaping out of the compartment.

[6]     "First American Ebola patient arrives in U.S. from Africa",  CBS News, August 2, 2014, http://www.cbsnews.com/news/ebola-patient-kent-brantly-arrives-for-treatment-in-u-s-from-africa/

[7]     "[WORLD HEALTH ORGANIZATION] Admits Sneezing Could Transmit Ebola," World Net Daily, http://www.wnd.com/2014/10/who-admits-sneezing-could-transmit-ebola/

[8]     See, e.g., "The Airborne Transmission of Ebola" http://www.oyetimes.com/health/71528-the-airborne-transmission-of-ebola and "Purdue Researcher: Ebola virus could spread by air" http://www.jconline.com/story/news/2014/10/07/purdue-researcher-ebola-virus-spread-air/16873245/ and "The True Story of Ebola in Reston, Virginia" http://canadafreepress.com/index.php/article/65053

42. Even the liberal Los Angeles Times is now sharply breaking with the Obama Administration and Obama's dishonest, compromised and corrupted "yes-men" at the CDC.

43. The Los Angeles Times [9] is reporting warnings from some of the nation's top experts in Ebola, who have actual experience with Ebola such as in Reston, Virginia, that:

    a. Strains of Ebola have actually been proven to be transmitted through the air.

    b. Even the virulent "Ebola Zaire" strain could be transmitted through the air to people together for long periods in a small space, such as an airplane.

    c. The absolutist claims about Ebola upon which the CDC is basing its policies have not been established as true according to top Ebola experts and are not reliable assumptions at this point.

    d. When a person's symptoms started can be highly subjective.

    e. Symptoms can be masked by taking medication to treat the symptom.

    f. Air travelers have strong motivations to hide Ebola-like symptoms.

    g. Therefore, a 21 day clock for Ebola symptoms cannot be relied upon.

44. Furthermore, many diseases that can only be transmitted in bodily fluids nevertheless spread rapidly and widely and can create massive, widespread epidemics.

**Plaintiff Exposed to Ebola Virus at Newark Airport and on Aircraft**

45. On information and belief, Plaintiff Larry Klayman has been exposed to the Ebola virus and subjected to an unreasonable risk by Defendants' actions.

46. Plaintiff Larry Klayman had to travel through Newark airport in Newark, New Jersey, on October 8, 2014, on his way toward the Mediterranean region as an invited speaker on National Security Agency (NSA) surveillance at a conference in Western Europe. While already in-light to Newark airport, Plaintiff Klayman, first learned that Newark airport is

---

[9] "Some Ebola Experts Worry Virus May Spread More Easily Than Assumed," Los Angeles Times, October 7, 2014.   http://www.latimes.com/nation/la-na-ebola-questions-20141007-story.html#page=1

a locale were Ebola infected Liberians and West Africans enter the United States at a rate of at least 150 per day. He learned of this by watching the CDC's press conference that day on in flight television.

47. Newark airport is one of the five (5) airports in the United States that Defendant Obama's yes-men running the CDC now say they have designated as a high-risk route for potential Ebola traffic and arranged for screening for Ebola beginning this Saturday.

48. The CDC has conveyed that at least 150 travelers per day [10] enter the United States from Liberia and the rest of West Africa through Newark, and other high-risk flights have been and will be steered through the screening in Newark.

49. Plaintiff Larry Klayman was already flying toward Newark airport within the United States on a domestic flight connecting through Newark to the Mediterranean at the time the CDC press conference announced the new policy of screening at Newark airport.

50. Flights from Ebola-inflicted areas of Africa normally fly to the United States by changing planes in Western Europe, with the Mediterranean being closest to Africa.

51. The Ebola virus is thus present on the physical aircraft flying the travel route between the Mediterranean area of Western Europe to Newark, New Jersey, and thus is present in the terminals of Newark airport.

52. The Ebola virus is being carried by other passengers flying on the aircraft from the Mediterranean area of Western Europe to Newark, New Jersey.

53. The Plaintiff watched the CDC conference over the internet on in-flight wireless internet while approaching Newark airport to change planes, and then first learned of the danger.

---

[10]     Various reports have cited either 150 per day or 150 per week.

54. Thus, Plaintiff was already captive to flying into Newark airport while learning that Defendants designated Newark as an airport harboring the high risk if not actuality of traffic infected with Ebola.

55. Medical experts are now grudgingly acknowledging that Ebola transmission can occur if a person with no cuts or openings in their skin merely touched his or her eye or lips with a hand after touching infected liquid or a moist residue on a soft surface like an airplane seat cushion or an in-flight magazine, or any number of surfaces in an airport.

56. A person sitting on an aircraft seat previously occupied by an Ebola-infected person or in an airport terminal can come into contact with that infected person's bodily fluids, including sweat, saliva, or liquids from a sneeze or the residue recent enough to retain live virus specimens.

57. A person sitting on an airplane near a person infected with Ebola for hours at a time can come into contact with that infected person's bodily fluids including sweat or saliva.

58. There are many opportunities in an airport for a surface to remain moist as a medium for the virus, especially in a public rest room.  If a person later touches their eye or mouth, such as after taking off their shoes at the security checkpoint or to relax for a long airplane flight and touches the bottom of a shoe made moist from a rest room floor, they could then deposit the virus within the fluids of their body.  A person who leans against a moist rest room counter might later touch his or her eye or mouth. Thus on information and belief Plaintiff Klayman was exposed to the Ebola virus.

**Defendants Knowingly Hold Open the Door for Muslim Terrorists**

59. Now, the Defendants are knowingly and willfully providing material support and aid to international terrorism and facilitating terrorism by allowing unrestricted entry of persons from countries experiencing outbreaks of the Ebola virus and adamantly opposing efforts, including calls from the U.S. Congress, to restrict travel from outbreak countries.

60. The Defendants know or should know, as set forth in detail herein, that the probable consequences of their actions are to facilitate the spread of the disease and to provide opportunities for germ warfare terrorism.

61. The Defendants know or should know from reasonable diligence that their actions are creating an unreasonable risk of and the conditions for germ warfare terrorism even if their own professed personal motives are to pursue other, political motives of an entirely different character, such as furthering the interests of Africans and Muslims at the expense of Plaintiff and the rest of the American people who are not of the African-black race or Islamic religion.

62. In 1918, merely the routine "flu" (influenza) killed an estimated 30 to 50 million people worldwide, including at least 675,000 Americans in an epidemic outbreak.

63. In 2005, then U.S. Senator Barack Hussein Obama warned in a speech on the Senate floor about the dangers of a disease epidemic and criticized then President Bush for not being prepared to control a possible avian flu epidemic.  See **"Flashback: Senator Obama rips Bush for being unprepared for avian flu epidemic,"** Hot Air http://hotair.com/archives/2014/10/02/flashback-senator-obama-rips-bush-for-being-unprepared-for-avian-flu-epidemic/ and https://www.youtube.com/watch?v=tdaHvEYNKSM

"The failure to prepare for emergencies can have devastating consequences. We learned that lesson the hard way after Hurricane Katrina. This nation must not be caught off-guard when faced with the prospect of an avian flu pandemic. The consequences are too high.

The flyways for migratory birds are well-established. We know that avian flu will likely hit the United States in a matter of time. With the regular flu season coming up shortly, conditions will be favorable for reassortment of the avian flu virus with the annual flu virus. Such reassortment could lead to a mutated virus that could be transmitted efficiently between humans, which is the last condition needed for pandemic flu.

The question is will we be ready when that happens? Let's make sure that answer is yes. I urge my colleagues in the Senate and the House to push this Administration to take the action needed to prevent a catastrophe that we have not seen during our lifetimes."

64. Therefore, the Defendants are well aware and have actual knowledge that their actions are extraordinarily dangerous, harmful and fatal to the American people and Defendants are acting willfully, knowingly, and intentionally in holding the door open for the risk of and actuality of an Ebola epidemic. Already, at least one person from Liberia has infected many Americans and this person himself has died, and other Americans such as the nurse who cared for the dead person.

**Defendants Are Motivated by Their Politics And Facilitate Terrorism**

65. Defendant Obama, feeling obvious kinship to Africa, as he was likely born in Kenya and in any event his deceased father was a Kenyan and a Muslim (making Defendant Obama a Muslim under Islamic Shariah law), has put into effect an ineffective so-called screening procedure, and done so only at five (5) U.S. airports.

66. This amounts to a reckless plan to open the door not just to Defendant Obama's infected fellow Africans, but also American Muslim ISIS suicide terrorists who would intentionally infect themselves with the deadly disease and thus spread it widely in the United States.

67. Defendant Obama, contrary to the reasonable and prudent actions of leaders of our western European allies, for example, for improper purpose refuses to ban travel to the United States from nations that have the disease in Africa.

68. Defendant Obama refused to take these measures because Defendant Obama himself, at a minimum, is of African and Muslim heritage and he does not care about protecting others in the United States at the expense of discriminating in favor of his "African and Muslim brothers."

69. His actions in not stopping travel from these African countries is thus discriminatory against Plaintiff and others similarly situated, who are not of African and/or Muslim origin.

70. Defendants seek to make the risk of Ebola to the United States the same as to Western Africa.  In keeping with Defendant Obama's liberal philosophy and affinity to his "African and Muslim brothers" at the expense of everyone else, Defendants worsen and are acting at the detriment of the Plaintiff and the rest of the American people instead of improving the condition of the people of West Africa.

71. Quite clearly, everything possible must be done to fight the Ebola disease in West Africa and protect the people of Africa.  However, doing so does not require exposing Plaintiff and other Americans to Ebola and endangering the American people and our military servicemen in order to help stricken nations.

72. Protecting the American people from the migration of illness would interfere with Defendant Obama's goals, much like his Muslim father, who was deported from the United States, of "cutting American down to size" and pulling the United States down to

the same level as poor and under-developed nations instead of helping those nations emulate the U.S. capitalist success.

73. In order to pursue Defendant Obama's actions to further and policy of uncontrolled and open borders, importing millions of illegal immigrants to fulfill Obama's promise in 2008 to "fundamentally transform America," Defendants knowingly, willfully, and intentionally refuse to protect the American people against an epidemic of Enterovirus D-68 and the Ebola virus causing the deadly viral hemorrhagic fever.

74. Five children in the United States have now died of Enterovirus D-68. [11] The outbreak of Enterovirus D-68 is widely-scattered but almost entirely among children having no contact with each other. This indicates that illegal immigrant children who crossed the Mexican border this summer carried the disease when the Obama Administration scattered them throughout the United States.  These illegal alien children were first housed in close quarters together, where all of them could catch whatever disease only one of them brought across the Mexican border.  Then they were sent everywhere.

75. Protecting Plaintiff and the American people against the risks of uncontrolled migration into the United States would severely undermine the politics, logic, and rationale of the Defendant Obama and his administration's actions and policies of refusing to secure America's borders and encouraging millions of illegal immigrants from poor countries to enter the United States at will.

76. In order to pursue Defendant Obama's goal of adding millions of new Democrat voters to the country and to the voter rolls so that the Democrat Party will win elections, the Defendants are knowingly and willfully harming and creating an unreasonable continuing

---

[11]    Sharyl Atkisson, "Polio Like Outbreak Claims Fifth Victim in U.S."
http://sharylattkisson.com/polio-like-outbreak-claims-fifth-life-in-u-s

risk to Plaintiff and the American people as a whole by refusing to control travel from dangerous areas under risky conditions.

77. In order to pursue the goals of the CDC and medical companies profiting from a vaccine and from treatments for Ebola, Defendants have created an unacceptable risk of an Ebola epidemic in the United States, including high-profile, grand-standing and dishonest gestures of flying Ebola patients back to the United States from Africa to test and advertise experimental cures for Ebola under development.

### Reckless Approach Reverses Defendant Obama's Actions and Policies of the "Precautionary Principle"

78. Historically, immigration through Ellis Island worked in America's history precisely because immigrants entering the country whose health status could not be confirmed were quarantined and housed on Ellis Island for a period of time to ensure they were not bringing in communicable diseases before being released into the general population.

79. Defendant Obama and his administration and Defendants champion the "Precautionary Principle" in the context of man-made global warming as national policy of the United States.[12]

80. Yet when people could actually die and have died, and are exposed to Ebola, over a time scale of days, weeks, or months from the Ebola epidemic or other diseases, Defendants fight against common sense measures.

81. Defendants' violation of their own policies with regard to Ebola indicates their improper and discriminatory motivations that are conflict with Defendants' Precautionary Principle.

---

[12]     The CDC is actively engaged in fighting global warming, when it should be using its funding to protect the American people from Ebola and Enterovirus D-68. http://www.cdc.gov/climateandhealth/default.htm

82. Although many people traveling from Ebola outbreak countries do not fly directly to the United States, most of such people hold visas granted by the United States of America for entry into the United States at airports.

83. The Defendants know exactly who has been granted a visa from Ebola outbreak countries for entry into the United States.

84. The Defendants could either cancel such visas or ban travel completely from Ebola infected African nations, but they refuse to for the improper reasons set forth herein.

**Actual Patients Defy Defendants Attempts to Downplay Risk**

85. At this time, a nurse in Spain has contracted Ebola under conditions which defy the Defendants' claims that the diseases is difficult to contract and transmitted only through bodily fluids. [13]

86. NBC photo-journalist Ashoka Mukpo was infected in Liberia by merely being in the area of those infected while taking photographs with NBC News Chief Medical Correspondent Dr. Nancy Snyderman and her crew.

87. Dr. Rick Sacra was infected despite taking every precaution and being clothed in protective haz-mat suits and clothing.  There was no exchange of bodily fluids.

88. Thomas Eric Duncan who arrived in Dallas, Texas, from Liberia merely – one time, for only a couple of minutes – helped carry a pregnant woman Marthaline Williams from her house to a waiting car to be taken to the hospital.  There was no exchange of any bodily fluids.  Duncan had no open wounds or any other entry point for any bodily fluids.

---

[13]     "So Called Ebola Experts Again Refuted on Transmission, Spanish Nurse has Ebola," AUN-TV, http://aun-tv.com/2014/10/so-called-ebola-experts-again-refuted-on-transmission-spanish-nurse-has-ebola/#comment-4843

Neighbors report that no one suspected at the time that Marthaline Williams had Ebola. He is now dead.

89. A second nurse, this time in Texas, who cared for Ebola patient Thomas Duncan at Texas Health Presbyterian Hospital, has now tested positive for Ebola in a preliminary test at the state public health laboratory in Austin. [14] News reports indicate that the nurse wore full protective suits and followed all prevention protocols, yet contracted the virus anyway. News reports indicate that it is "unknown" how this nurse caught Ebola.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

***Aiding and abetting the murder, attempted murder and
serious bodily injuries to united states citizens in violation
of 18 U.S.C. § 2332(a); 18 U.S.C. § 2332(b); 18 U.S.C. § 2332(c) and18 U.S.C. § 2333***

90. Plaintiff repeats and re-alleges each and every allegation in each of the foregoing paragraphs as if fully set forth herein.

91. By the acts alleged herein, Defendants, each and every one of them, are aiding and abetting and conspiring to help the commission of acts of international terrorism.

92. Each of the Defendants thus provides substantial assistance to acts of terrorism in violation of 18 U.S.C. § 2332.

93. Each of the Defendants knows, or has recklessly disregarded, that it is providing material support to international terrorism.

94. By aiding and abetting violations of 18 U.S.C. § 2332 Defendants have placed the Plaintiff in imminent danger and actual danger in his or her person, property, and/or business

---

[14]    News Release from Texas Department of State health Services, October, 12, 2014, https://www.dshs.state.tx.us/news/releases/20141012.aspx

95. Defendants are jointly and severally liable pursuant to 18 U.S.C. § 2333 for any and all damages that Plaintiff and those similarly situated have sustained as a result of such injuries.

## SECOND CAUSE OF ACTION

### Conspiracy to commit murder and attempted murder of United States citizens in violation of 18 U.S.C. §§ 2332(b) and 2333

96. Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

97.  Plaintiff has been placed in imminent and actual danger in his person, property or business as prohibited by 18 U.S.C. § 2332.

98. The acts of terrorism at issue are extreme and outrageous and committed to cause extreme physical pain and suffering to Plaintiff and those similarly situated.

99. By encouraging and facilitating violations of 18 U.S.C. § 2332 that have injured Plaintiff's respective person, property, or business, Defendants, each and every one of them, are jointly and severally liable pursuant to 18 U.S.C. § 2333 for any and all damages that Plaintiff has sustained as a result of such injuries.

## THIRD CAUSE OF ACTION

### Provision of material support to terrorists in violation of 18 U.S.C. § 2339A and 18 U.S.C. § 2333

100.     Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

101.     Each of the Defendants, jointly and severally, is providing material support to the preparation and carrying out of numerous acts of international terrorism which have

placed the Plaintiff and those similarly situated in imminent and actual danger of death or

illness.

102.      By participating in the commission of violations of 18 U.S.C. § 2339A that have

caused Plaintiff to be injured in his or her person, business or property, Defendants, each

and every one of them, are jointly and severally liable pursuant to 18 U.S.C. § 2333 for

any and all damages that Plaintiff have sustained as a result of such injuries.


## FOURTH CAUSE OF ACTION

### *Fifth Amendment Violation*
### *(Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics)*

103.      Plaintiff repeats and re-alleges each and every allegation of the foregoing

paragraphs as if fully set forth herein.

104.      Plaintiff and those similarly situated enjoy a liberty interest in their persons of not

being deprived of life by actions of the government without due process of law, as

guaranteed by the Fifth Amendment to the U.S. Constitution.

105.      The violations of this liberty interest are compensable under *Bivens v. VI*

*Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

106.      Defendants Obama, Fauci, Frieden, Burwell, and Johnson violated the

constitutional rights of the Plaintiff and those similarly situated by exposing and

intentionally facilitating and inviting the spread of the deadly Ebola virus by terrorists

and others entering the United States.

107.      By reason of the wrongful conduct of the Defendants, each and every one of

them, jointly and severally, Plaintiff has suffered and continues to suffer from severe

emotional distress and physical harm, pecuniary and economic damage, loss of services, and loss of society accordingly.

108.     As a direct and proximate result of the intentional and willful actions of Defendants, Plaintiff demands judgment be entered against Defendants Obama, Fauci, Frieden, Burwell, and Johnson, each and every one of them, jointly and severally, in their individual and official capacities, including an award of compensatory and actual damages in an amount to be determined at trial, punitive damages, equitable relief in the form of preliminary and permanent injunctions preventing travel into the United States from Liberia and West Africa as well as other equitable relief that the court may deem appropriate, reasonable attorneys fees, pre-judgment interest, post-interest and costs, and such other relief as the Court may deem just and proper.

109.     Plaintiff demands declaratory and injunctive and other equitable relief against all of Defendants to cease their illegal acts in facilitating the opportunity and in fact furthering terrorism by infecting Plaintiff and other American citizens with the Ebola virus and ultimately creating a horrific Ebola epidemic in the United States.

## **FIFTH CAUSE OF ACTION**

### *Assault*

110.     Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

111.     The tort of assault, of course, is different from laypersons' understanding of a physical impact, but is in fact the tort of placing one in fear of imminent harm.

112.      Defendants have placed Plaintiff and those similarly situated in actuality if not the apprehension of an imminent harmful or offensive contact, from which they are not only injured but could ultimately die a horrible and painful death.

113.      As set forth above, Ebola is being used as a deadly weapon.

114.      Even those who have survived Ebola describe the burning sensations as feeling worse than being in the fires of Hell.

115.      By reason of the wrongful conduct of Defendants, each and every one of them, jointly and severally, Plaintiff and those similarly situated have suffered conscious pain, suffering, severe emotional distress and the fear of imminent serious bodily injury or death

### SIXTH CAUSE OF ACTION

#### *Intentional Infliction of Emotional Distress*

116.      Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

117.      Defendants' acts are willful malicious, deliberate, or were done with reckless indifference to the likelihood that such behavior would cause severe emotional distress and with utter disregard for the consequences of such actions.

118.      A main purpose of terrorism is to instill terror, that is fear, to emotionally torment the population of a country.

119.       Defendants are facilitating what in effect is Ebola terrorism as set forth in the preceding paragraphs of this complaint, and creating the corresponding fear and apprehension and distress of this actual danger.

120.     Defendants' conduct is unreasonable and outrageous and exceeds the bounds

tolerated by decent society, and was done willfully, maliciously and deliberately, or with

reckless indifference, to cause Plaintiff severe mental and emotional pain, distress, and

anguish and loss of enjoyment of life.

121.     As a direct, foreseeable and proximate result of the conduct of Defendants, each

and every one them, jointly and severally, as alleged herein above, Plaintiff has suffered

non-pecuniary damages in amounts to be proven at trial.

<u>**SEVENTH CAUSE OF ACTION**</u>

***Deprivation of Civil Rights Under Color of State Law***

122.     Plaintiff repeats and re-alleges each and every allegation of the foregoing

paragraphs as if fully set forth herein.

123.     The Defendants' actions and their omissions with regard to their duties to act

constitute knowing and intentional discrimination in government action on the basis of

race, ethnicity, nationality and religion in favor of Africans and Muslims to the detriment

Plaintiff and other similarly situated Americans who are not of African-black heritage or

the Islamic religion.

124.     The Defendants' actions and their omissions with regard to their duties to act

constitute knowing and intentional discrimination in government action on the basis of

religion in favor of Muslims to the detriment of Plaintiff and similarly situated American

Jews and Christians, such as Plaintiff who is a Caucasian Jewish-American.

125.     By the acts and omissions of the Defendants described above, the Defendants and

each of them deprived the Plaintiff of his constitutional rights to equal protection of the

laws and equal privileges guaranteed by the Fourteenth Amendment to the United States Constitution.

126.     By the acts and omissions of the Defendants described above, the Defendants and each of them deprived the Plaintiff of his constitutional rights against the deprivation of life without due process of law in violation of the Fifth Amendment to the United States Constitution.

127.     By the acts and omissions of the Defendants described above, the Defendants and each of them deprived the Plaintiff of his constitutional rights to be treated by the U.S. Government in a color-blind fashion free from favoritism and discrimination on the basis of Plaintiff's race, ethnicity, nationality and religion.

128.     At all times relevant to this Complaint, the Defendants and each of them acted willfully and intentionally to violate the Plaintiff's civil and constitutional rights and/or with reckless disregard of whether their conduct violated the Plaintiff's civil and constitutional rights.

129.     In the actions described above, the Defendants and each of them violated the provisions of 42 U.S.C. §1983 to the injury of the Plaintiff.

130.     The Defendants conspired with one another to violate the civil and constitutional rights of the Plaintiff and in so doing violated the provisions of 42 U.S.C. §1983 and §1985 to the injury of the Plaintiff, and are thus liable both personally and in their individual capacities.

## **PRAYER FOR RELIEF**

With regard to all counts, Plaintiff demands that judgment be entered against Defendants each and every one of them, jointly and severally, for compensatory and actual damages because

of their demonstrable physical and emotional injury to Plaintiff, punitive damages because of

Defendants callous and reckless indifference and malicious acts, and attorneys fees, costs, an

award of at least $75,000 in an amount to be determined by the jury, equitable relief in the form

of preliminary and permanent injunctions banning any more travel to the United States from

infected African, Muslim and other nations, as well as other forms of equitable relief as may be

appropriate, such as declaring and ordering that Defendant Obama is not a natural born citizen

and that he be removed from the Office of the President as he has no such legitimacy or authority

to be president and thus to act by or on behalf of Plaintiff and the American people, and that all

of his orders with regard to administering to Ebola domestically and overseas be declared void,

that Defendant Obama be referred to the immigration authorities of the Department of Homeland

Security for appropriate deportation proceedings as he is not even a naturalized U.S. citizen and

thus is in the United States illegally, and such other relief the Court may deem just and proper.

## **JURY DEMAND**

**Plaintiff respectfully demands a jury trial on all issues so triable.**

Dated: October 13, 2014

Respectfully submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
Washington, D.C. Bar No. 334581
Freedom Watch, Inc.
2020 Pennsylvania Avenue N.W.
Suite 345
Washington, D.C. 20006
(310) 595-0800
leklayman@gmail.com
Attorney for Plaintiff